## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ELBERT L. BROWN**
1355 New York Ave NE,
Washington, DC 20002

and

**MICHAEL LEMEUL HOLLAND**
1200 North Capitol St, NW, #304
Washington, DC  20003

and

**LOUIS SYLVESTER WHITE**
801 East Men's Shelter 801 East Building 2700
Martin Luther King Blvd., SE
Washington, DC 20032

and

**REGINALD BRYANT**
801 East Men's Shelter 801 East Building 2700
Martin Luther King Blvd., SE
Washington, DC 20032

and

**MARC GATLING**
c/o 4058 Minnesota Avenue, NE
Washington, DC 20019

and

**JOMO KENYATTA HALL**
1616 Isherwood, NE, Apt 4
Washington, DC 20001

Plaintiffs, on behalf of themselves and all
others similarly situated,

   v.

**GOVERNMENT OF THE DISTRICT OF
COLUMBIA,**

Defendant.

Civil Action No.: 15-01380 **(KBJ)**

## CLASS ACTION

### Fifth Amended Class Action Complaint and Jury Demand

### Introduction

**1.**    Elbert Lee Brown, Michael Lemeul Holland, Louis Sylvester White, Reginald Bryant, Marc Gatling, and Jomo Kenyatta Hall on behalf of themselves and the classes defined below bring this class action against the Government of the District of Columbia (the "District") for injuries they suffered during the Class Period because the District enforced its unconstitutional panhandling statute against them. D.C. Code § 22-2301 and D.C. Code § 22-2302(a), (b), and (d).

**2.**    The Arrest/ Detention Class consists of Mr. Brown, Mr. Holland, Mr. White, Mr. Bryant, Mr. Gatling, Mr. Hall and the other members of the Arrest/ Detention Class defined below.

**3.**    The Prosecution Class consists of Mr. Brown, Mr. Holland, Mr. White, Mr. Gatling, Mr. Hall and the other members of the Prosecution Class defined below. Mr. Bryant is not a member of the Prosecution Class.

### Jurisdiction and Venue

**4.**    This Court has original jurisdiction over the 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**5.**    Venue is appropriate in this judicial District. Each of the claims for relief arose in this judicial district and all events described herein occurred in the District of Columbia.

### Parties

**6.**    Elbert Lee Brown, Reginald Bryant and Jomo Kenyatta Hall are adults who were arrested, detained and prosecuted under the District's "aggressive" panhandling statute, D.C. Code § 22-2302(a)(aggressive panhandling).

**7.**     Michael Lemeul Holland is an adult who was arrested and prosecuted under the District's motor vehicle in a roadway panhandling statute, D.C. Code § 22-2302(d)( motor vehicle in a roadway).

**8.**     Michael Lemeul Holland was also arrested and convicted and sentenced to time served on a D.C. Code § 22-2302(d)( motor vehicle in a roadway) charge in a different panhandling case, number 2014 CDC 007164, <u>District of Columbia v. Michael Holland</u>.

**9.**     Louis Sylvester White and Marc Gatling are adults who were arrested by the Metro Transit Police and prosecuted by the Attorney General for the District of Columbia ("OAG") under the District's panhandling in a Metro station statute, D.C. Code § 22-2302(b) (panhandling in a Metro station).

**10.**     Marc Gatling was arrested for panhandling conduct *inside* of a <u>McFarlin</u> zone, defined below.

**11.**     Louis Sylvester White was arrested for panhandling conduct *outside* of a <u>McFarlin</u> zone, defined below.

**12.**     Although Mr. Bryant was arrested in a Metro station by the Metro Transit Police, he was arrested, charged, and prosecuted for aggressive panhandling by the "United States [A]ttorney for the District of Columbia or his assistants" ("USAO") under D.C. Code § 22-2302(a).

**13.**     Each of Mr. White, Mr. Gatling, and Mr. Bryant was in the "above ground" free areas of a Metro station at all times when the officers suspected them of panhandling.

**14.**     The District is a municipal corporation capable of being sued under D.C. Code § 1-102.

**15.**     During all events described herein, all police officers referred to herein, named or unnamed, unless otherwise specified, were police officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of

3

the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

**16.**     WMATA, the Washington Metropolitan Area Transit Authority ("WMATA"), is a tri-jurisdictional agency created by an interstate compact (the "Compact") among the Commonwealth of Virginia, the State of Maryland, and the District of Columbia that oversees the Metro stations, among other authority, under the color of state and local law.

**17.**     WMATA is not a party to this action.

**18.**     But, three of the named plaintiffs and other class members were arrested on WMATA property (Metro stations) by officers of the Metro Transit Police, the police force of WMATA. D.C. Code § 9-1107.01, ¶ 76 *et seq.*

### District's Panhandling Statute

**19.**     D.C. Code § 22-2301, *et seq.* is the District's panhandling statute even though the statute does not use the term "panhandling."

**20.**     Congress designated the OAG under D.C. Code § 23-101(a) to prosecute panhandling but it also provided under D.C. Code § 23-101(d) and (e) that the "U.S. [A]ttorney and his assistants" ("USAO") may prosecute panhandling offenses if the OAG "consents."

### Definition of Panhandling in the Panhandling Statute

**21.**     D.C. Code § 22-2302(a) to (h) criminalizes asking, begging, or soliciting "alms, including money and other things of value," in certain places, manners, and situations. The definition section of the statute at D.C. Code § 22-2301(2) defines "ask, beg, or solicit alms" in all of these situations as including "the spoken, written, or printed word or such other act conducted for the purpose of obtaining an **immediate donation** of money or thing of value." (emphasis added).

**22.**     Traditionally "alms" means "money, food, or other donations given to the poor or needy as charity."

### Definition of Aggressive Panhandling in the Panhandling Statute

**23.**    D.C. Code § 22-2301(1)(A) to (D) of the definition section of the statute makes "aggressive manner" a defined term.

**24.**    "Aggressive manner" under D.C. Code § 22-2301(1)(A) to (D) means:

> ➢ **(A)**  Approaching, speaking to, or following a person in a manner as would cause a reasonable person to fear bodily harm or the commission of a criminal act upon the person, or upon property in the person's immediate possession;
>
> ➢ **(B)**  Touching another person without that person's consent in the course of asking for alms;
>
> ➢ **(C)**  Continuously asking, begging, or soliciting alms from a person after the person has made a negative response; or
>
> ➢ **(D)**  Intentionally blocking or interfering with the safe or free passage of a person by any means, including unreasonably causing a person to take evasive action to avoid physical contact.

**25.**    When law enforcement officers make arrests for "aggressive panhandling" they do not specify in charging documents or "Gersteins" (sworn affidavit setting forth the probable cause narrative used by prosecutors to "paper" cases) which section or subsection of the statute they are enforcing, *e.g.*, A, B, C, or D.

**26.**    When District prosecutors initiate and pursue prosecutions in the District of Columbia sup for "aggressive panhandling" they do not specify in the information which section or subsection of the statute they are enforcing, *e.g.*, A, B, C, or D.

**27.**    Each of subsections A, B, and D is duplicative of another criminal statute but is directed specifically at panhandling. D.C. Code § 22-2301; D.C. Code § 22-2302(a) – (h).

**28.**    Subsection C is itself protected speech.

**29.**    The statute makes it a crime to "ask, beg, or solicit alms" in certain specified situations. D.C. Code § 22-2302(a) – (h) ("panhandling") including:

- (a)  No person may ask, beg, or solicit alms, including money and other things of value, in an aggressive manner in any place open to the general public, including sidewalks, streets, alleys, driveways, parking lots, parks, plazas, buildings, doorways and entrances to buildings, and gasoline service stations, and the grounds enclosing buildings.

                                                * * *

- (b)  No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop.

                                                * * *

-  (d)  No person may ask, beg, or solicit alms from any operator or occupant of a motor vehicle that is in traffic on a public street.

### Panhandling in the Metro station under the Panhandling Statute

**30.**    D.C. Code § 22-2302(b) governs (among other things) panhandling in the Metro stations[1].

**31.**    As drafted, the text of D.C. Code § 22-2302(b) criminalizes panhandling anywhere in a Metro station.

**32.**    But, the District of Columbia Court of Appeals placed a limiting gloss on D.C. Code § 22-2302(b) which defines the phrase in Section 22-2302(b), "subway station or stop," in light of WMATA's regulations as meaning within fifteen feet of the escalator entrance or exit. McFarlin v. District of Columbia, 681 A.2d 440, 448 (D.C. 1996).

**33.**    Therefore, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) prohibits all panhandling (whether "aggressive" or nonaggressive) in Metro stations within fifteen feet of the escalator entrance (the "McFarlin zone").

**34.**    But, conversely, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) does not apply anywhere else in a Metro station.

**35.**    So, as construed by the District of Columbia Court of Appeals in McFarlin, D.C. Code § 22-2302(b) does not apply in Metro stations outside the McFarlin zones.

---

[1] The text of Section (b) reads: "No person may ask, beg, or solicit alms in any public transportation vehicle; or at any bus, train, or subway station or stop." Plaintiffs challenge this section only as it applies to "subway stations," that is, Metro stations.

Details of Plaintiffs' Arrests, Detentions and Releases, and Prosecutions

## Mr. Elbert Brown

**36.**     On 9/4/2014 at about 8:00 p.m. Mr. Brown was arrested by an officer of the MPD near 100 M Street NW in Washington, D.C. for two separate panhandling offenses based on two separate events: charge # 1, panhandling from the occupant of a motor vehicle that is in traffic on a public street (D.C. Code § 22-2302(d)) and charge # 2, aggressive panhandling  (D.C. Code § 22-2302(a)).

**37.**     Mr. Brown's contact with MPD began at about 7:15 p.m. on 9/4/2014 when according to the arresting officer he saw Mr. Brown was walking up and down in the middle of the street panhandling occupants and operators of cars in on the road in what he termed an "aggressive manner" asking them to put money in a white plastic cup he was holding.

**38.**     The arresting officer wrote in his <u>Gerstein</u> that he told Mr. Brown to stop panhandling and Mr. Brown did stop for a while.

**39.**     The arresting officer wrote in his <u>Gerstein</u> that he came back about half an hour later and Mr. Brown was again walking up and down in the middle of the street panhandling occupants and operators of cars in an aggressive manner and asking them to put money in a white plastic cup he was holding.

**40.**     The arresting officer wrote in his <u>Gerstein</u> that Mr. Brown on this second occasion was stopping motorists to beg from them by knocking on their windows and thereby impeding the flow of traffic.

**41.**     The arresting officer arrested Mr. Brown for panhandling from the occupant of a motor vehicle that is in traffic on a public street (D.C. Code § 22-2302(d)) and aggressive panhandling from a second motorist (D.C. Code § 22-2302(a).

### Mr. Brown at the MPD Station

**42.** The MPD officer then transported Mr. Brown to the 1st District police station arriving there about 8:30 p.m.

**43.** Mr. Brown was fingerprinted and placed in a holding cell with other persons.

**44.** At some point Mr. Brown was transported to Superior Court for presentment the next day.

**45.** Between arrest and presentment he was held in the custody of the MPD at a police station or in the custody of the District's Department of Corrections at Central Cell Block.

### Mr. Brown charged and prosecuted; one charge dismissed, one charge guilty plea

**46.** Mr. Brown was charged by an information sworn out on 9/5/2014 by an Assistant Attorney General (attorney of the OAG's office) for two separate panhandling offenses based on two separate events: charge # 1, Panhandling - Motor Vehicle on Street (D.C. Code § 22-2302(d)) and charge # 2, Panhandling – Aggressive (D.C. Code § 22-2302(a)).

**47.** On 9/5/2014 Mr. Brown appeared at Superior Court at about 1:00 p.m. for arraignment on the two panhandling charges in a prosecution conducted by the OAG.

**48.** He pled not guilty and he was released on PR (personal recognizance) pending trial.

**49.** After his initial release Mr. Brown was held without bond in the case from 9/20/2014 until 10/1/2014.

**50.** On 10/1/2014 Mr. Brown pled guilty to charge # 1 (aggressive panhandling, D.C. Code § 22-2302(a)) and the OAG dismissed charge # 2 (panhandling from the occupant of a motor vehicle that is in traffic on a public street, D.C. Code § 22-2302(d)).

### Mr. Michael Holland

**51.** Mr. Holland has been arrested for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d) several times during the Class Period.

## Mr. Michael Holland's 1/12/2013 Arrest

### 2013 CDC 001136, District of Columbia v. Michael Holland

**52.**     Mr. Holland was arrested on 1/12/2013 at about 5:00 p.m. by the MPD in the District of Columbia for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d).

### Mr. Holland at the Station

**53.**     The MPD officer then transported Mr. Holland to the 5th District police station arriving there about 5:30 p.m.

**54.**     Mr. Holland was fingerprinted and placed in a holding cell with other persons.

**55.**     Mr. Holland was released on citation about three hours later and given a court date of 1/29/2013.

### Mr. Holland charged and prosecuted; Mr. Holland "posted and forfeited"

**56.**     Mr. Holland was charged by an information sworn out by an Assistant Attorney General on about1/13/2013 for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d) in case number 2013 CDC 001136, District of Columbia v. Michael Holland.

**57.**     Mr. Holland appeared at a status on 1/29/2013 and enrolled in a diversion program. He was released on PR pending trial.

**58.**     At a status hearing on 3/1/2013 Mr. Holland opted out of the diversion program and in exchange for Mr. Holland's "post and forfeiting" in an amount not stated on the docket the government *nolle*'d the charge.

**59.**     At a status hearing on 4/29/2013 Mr. Holland appeared and showed that he had "posted and forfeited" and the government *nolle*'d the case.

### Mr. Michael Holland's 8/26/2013 Arrest

### 2013 CDC 015095, District of Columbia v. Michael Holland

**60.**    Mr. Holland has been arrested for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d) several times during the Class Period.

**61.**    Mr. Holland was arrested on 8/26/2013 by the MPD in the District of Columbia for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d).

### Mr. Holland at the MPD Station

**62.**    The MPD officer then transported Mr. Holland to the 5th District police station arriving there about 8:30 p.m.

**63.**    Mr. Holland was fingerprinted and placed in a holding cell with other persons.

**64.**    At some point Mr. Holland was transported to Superior Court for presentment the next day.

**65.**    Between arrest and presentment he was held in the custody of the MPD at a police station or in the custody of the District's Department of Corrections at Central Cell Block.

### Mr. Holland charged and prosecuted; case was dismissed as part of a plea in another case

**66.**    Mr. Holland was charged by an information sworn out on 8/26/2013 by an Assistant Attorney General for panhandling offenses under D.C. Code § 22-2302(d) panhandling from the occupant of a motor vehicle that is in traffic on a public street in case number 2013 CDC 015095, District of Columbia v. Michael Holland, in a prosecution conducted by the OAG.

**67.**    He pled not guilty and he was released on PR pending trial.

**68.**    On 9/18/2013 Mr. Holland appeared for a court status call and the case was dismissed as part of a plea in another case, 2013 CTF 011506.

## Mr. Michael Holland's 4/23/2014 Arrest and Prosecution

## 2014 CDC 007164, District of Columbia v. Michael Holland

**69.**     Mr. Holland was arrested on 4/23/2014 at about 12:30 p.m. by the MPD in the District of Columbia for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d).

### Mr. Holland at the MPD Station

**70.**     The MPD officer then transported Mr. Holland to the 5th District station arriving there about 1:00 p.m.

**71.**     Mr. Holland was fingerprinted and placed in a holding cell with other persons.

**72.**     At some point Mr. Holland was transported to Superior Court for presentment the next day.

**73.**     Between arrest and presentment he was held in the custody of the MPD at a police station or in the custody of the District's Department of Corrections at Central Cell Block.

### Mr. Holland charged and prosecuted; pled guilty and sentenced to time served

**74.**     Mr. Holland was charged by an information sworn out on 4/24/2014  by an Assistant Attorney General for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d) in case number 2014 CDC 007164, District of Columbia v. Michael Holland in a prosecution conducted by the OAG.

**75.**     At arraignment on 4/24/2014 Mr. Holland pled not guilty and he was released on PR pending trial.

**76.**     On 5/14/2014 Mr. Holland appeared for a court status call,  pled guilty,  was sentenced to time served in case number 2014 CDC 007164, District of Columbia v. Michael Holland.

### Mr. Holland's money seized for civil forfeiture

**77.**    In one case in December 2014, the MPD arrested Mr. Holland for panhandling and drug possession and, according to the Gerstein, MPD police seized the $5.83 in his pocket, presumably the proceeds of his panhandling, for civil forfeiture. 2014 CDC 021586.

### Mr. Holland's money seized for evidence

**78.**    Mr. Holland was arrested  by the MPD in the District of Columbia for panhandling from the occupant of a motor vehicle that is in traffic on a public street under D.C. Code § 22-2302(d) on the following dates and the MPD seized money from him and kept it for evidence as shown in the table and never returned it to him, or gave him notice and a hearing concerning the right to return of his money:

| Date | Case # | Amount |
|------|--------|--------|
| 6/24/2014 | NP ("no papered," prosecutor declined to prosecute) | $4.41 |
| 9/20/2013 | 2013 CTF 016796 (plea) | $4.72 |
| 8/25/2013 | 2013 CDC 015095 (nolle'd) | $4.58 |

### Mr. Reginald Bryant

**79.**    On 3/18/2015 at about 5:30 p.m. Mr. Bryant was arrested by two officers of the Metro Transit Police, including Officer Poulos, at the WMATA Union Station Metro Station in Washington, D.C. for aggressive panhandling in what the arresting officer described in the Gerstein as "a public transportation area."

**80.**    In the Gerstein the officer did not state how far Mr. Bryant was from any of the escalator entrances.

**81.**    Mr. Bryant was in the "above ground" free areas of the Union Station Metro Station at all times when the officers suspected him of panhandling.

**82.**     The "above ground" free areas of the WMATA stations including the Union Station

Metro Station are public fora.

**83.**     The area the arresting officer described in the <u>Gerstein</u> as "a public transportation area" is

a public forum.

**84.**     According to the officers, a search incident to arrest produced two ziplock bags on Mr.

Bryant's person containing what the officers believed was heroin.

**85.**     The officers also took an amount of money from Mr. Bryant's person for evidence and

possibly for civil forfeiture, under D.C. law.

### Mr. Bryant at the MPD Station

**86.**     Mr. Bryant was then transported to the 1st District police station.

**87.**     Mr. Bryant was processed pursuant to his arrest, including being fingerprinted by the

MPD, and placed in a holding cell with other persons in a cell at the 1st District.

**88.**     At some point Mr. Bryant was transported to Superior Court for presentment of his

charges before a judicial officer the next day.

**89.**     Between arrest and presentment he was held in the custody of the MPD at a police station

or in the custody of the District's Department of Corrections at Central Cell Block.

### Mr. Bryant charged and prosecuted; case DWIP'ed

**90.**     Mr. Bryant was charged by an information sworn out on 3/19/2015 by an Assistant United

States Attorney ("AUSA") acting pursuant to D.C. Code § 23-101(d) charging Mr. Bryant with one

count of aggressive panhandling under D.C. Code § 22-2302(a) and one count of simple

possession of a controlled substance.

**91.**     On 3/19/2015 Mr. Bryant appeared at Superior Court for arraignment on the two charges,

including the panhandling charge in case 2015 CMD 003821.

**92.**    He pled not guilty and he was released on PR pending trial. The Superior Court judicial officer also issued a "stay away" order preventing Mr. Bryant from going to Union Station Metro Station during the pendency of the case, weekly reporting to PSA, and a mental health evaluation. CourtView docket, 2015 CMD 003821.

**93.**    After his initial release Mr. Bryant appeared for a court status call on 04/06/2015.

**94.**    The Court set the case for trial on 7/29/2015. The U.S. Attorney filed two motions to continue the case, which were both granted.

**95.**    Ultimately Mr. Bryant's case was dismissed for want of prosecution on 9/28/2015.

**96.**    The arresting officer in this case, Officer Poulos, was one of the arresting officers in Mr. White's arrest at the NOMA-Gallaudet U Metro Station.

**97.**    Mr. White's case was also dismissed for want of prosecution at the trial date.

**Mr. Louis White**

**98.**    On 9/25/2015 at about 4:30 p.m. Mr. White was arrested by an officer of the Metro Transit Police, Officer Poulos, for panhandling at the entrance to the NOMA-Gallaudet U Metro Station in Washington, D.C.

**99.**    Investigation shows that Mr. White was more than 15 feet from the entrance or exit of any escalator in the NOMA-Gallaudet U Metro Station at all times when he was panhandling.

**100.**    In fact, both entrances in the NOMA-Gallaudet U Metro Station are more than 15 feet from the fare gates, and the entrances to the escalators leading to the train platforms are on the far side of the fare gates from the station entrances.

**101.**    Therefore, Mr. White was **not** within any of the McFarlin zones when he was panhandling.

**102.**    In the Gerstein the officer described the area in which Mr. White was panhandling as being in "a public transportation area."

**103.**   The <u>Gerstein</u> does not state how far Mr. White was from the escalator entrance, or whether he was inside or outside of the <u>McFarlin</u> zone when he was panhandling;.

**104.**   The <u>Gerstein</u> does not state that Mr. White's activities interfered with the pedestrian traffic flow in the usual egress and ingress to the station proper or to the fare gate

**105.**   Both entrances in the NOMA-Gallaudet U Metro Station are in the "above ground" free areas of the WMATA NOMA-Gallaudet U Metro Station.

**106.**   The "above ground" free areas of the WMATA stations including the NOMA-Gallaudet U Metro Station are public fora.

## Mr. White at the MPD Station

**107.**   Mr. White was then transported to the MPD 5th Police District station.

**108.**   Mr. White was processed for his arrest, including being fingerprinted by the MPD, and placed in a holding cell with other persons in a cell at the 5th District.

**109.**   At some point Mr. White was transported to Superior Court for the presentment of his case before a judicial officer the next day.

**110.**   Between arrest and presentment he was held in the custody of the MPD at a police station or in the custody of the District's Department of Corrections at Central Cell Block.

## Mr. White charged and prosecuted; case DWIP'ed

**111.**   Mr. White was charged by an information sworn out on 3/19/2015 by an OAG Attorney charging Mr. White with one count of violating D.C. Code § 22-2302(b), panhandling in a "public transportation vehicle; or at any bus, train, or subway station or stop."

**112.**   The information, sworn out on 3/19/2015 by an OAG Attorney, does not state how far Mr. White was from any of the escalator entrances in the Metro station when he was panhandling; allege that he was in the <u>McFarlin</u> zone.

**113.**   The information merely repeats the language of the statute.

**114.**   On 3/19/2015 Mr. White appeared at Superior Court for arraignment on the panhandling charge under D.C. Code § 22-2302(b) in case 2015 CDC 013269.

**115.**   Mr. White pled not guilty and he was released on PR and other conditions pending trial including Mental Health Screening/Evaluation and participation in a Drug Treatment Program. CourtView docket, 2015 CDC 013269.

**116.**   After his initial release Mr. White appeared for a status call on 9/29/2015 and the case was set for trial on 11/13/2015.

**117.**   The case was dismissed for want of prosecution at the 11/13/2015 trial date.

**118.**   The arresting officer in this case, Officer Poulos, was one of the arresting officers in Mr. Bryant's arrest at the Union Station Metro Station.

**119.**   Mr. Bryant's case was also dismissed for want of prosecution at the trial date.

### Money taken from Mr. White and kept as evidence by the Metro Transit Police

**120.**   According to the <u>Gerstein</u> in the case, the Metro Transit Police took an amount of money from Mr. White (exact amount not stated) and kept it as evidence.

### Mr. Marc Gatling

**121.**   On 11/30/2015 at about 9:15 p.m. Mr. Gatling was arrested by an officer of the Metro Transit Police at the WMATA Eastern Market Metro Station in Washington, DC for panhandling in the "above ground" free areas of the Eastern Market Metro Station.

**122.**   Mr. Gatling was in the "above ground" free areas of the Eastern Market Metro Station at all times when he was panhandling.

**123.**   The "above ground" free areas of the WMATA Metro stations including the Eastern Market Metro Station are public fora.

**124.**   Investigation shows that Mr. Gatling was less than 15 feet from the escalator entrances in the Metro station at all times when he was panhandling, so Mr. Gatling was inside of the <u>McFarlin</u> zone in the station at all times when he was panhandling.

**125.**   The <u>Gerstein</u> does not state how far Mr. Gatling was from any of the escalator entrances, or whether Mr. Gatling was inside of the <u>McFarlin</u> zone in the station when he was panhandling.

**126.**   The <u>Gerstein</u> does not state that Mr. Gatling's activities interfered with the pedestrian traffic flow in the usual egress and ingress to the station proper or to the fare gate.

### Mr. Gatling at the MPD Station

**127.**   Mr. Gatling was then transported to the MPD 1st Police District station.

**128.**   Mr. Gatling was processed, including being fingerprinted, by the MPD and placed in a holding cell with other persons in a cell at the 1st District.

**129.**   At some point the next day Mr. Gatling was transported to Superior Court by the District for presentment of his case before a judicial officer.

**130.**   Between arrest and presentment he was held in the custody of the MPD at a police station or in the custody of the District's Department of Corrections at Central Cell Block.

### Mr. Gatling charged and prosecuted; entered diversion

**131.**   Mr. Gatling was charged by an information sworn out on 12/1/2015 by an OAG Attorney with one count of D.C. Code § 22-2302(b), panhandling in a "public transportation vehicle; or at any bus, train, or subway station or stop" in case 2015 CDC 016679.

**132.**   The information, sworn out on 12/1/2015 by an OAG Attorney, does not state how far Mr. Gatling was from any of the escalator entrances in the Metro station, or whether he was inside the <u>McFarlin</u> zone when he was panhandling.

**133.**   The information merely repeats the language of the statute.

**134.**   On 12/1/2015 Mr. Gatling appeared at Superior Court for arraignment on the panhandling charge under D.C. Code § 22-2302(b) in case 2015 CDC 016679.

**135.**   He pled not guilty and he was released on PR and other release conditions pending trial, including MH Assessment & Possible Placement by PSA. CourtView docket, 2015 CDC 016679.

**136.**   After his initial release Mr. Gatling appeared for a court status call on 12/8/2015 and Mr. Gatling enrolled in the diversion plan in exchange for his performing eight hours of community service.

**137.**   The case was set for a court status call on 2/19/2016, and the case was dismissed because he successfully completed diversion.

## Mr. Hall

**138.**   On Jan 21, 2018 at about 7:45 p.m. Mr. Hall was arrested by officers of the MPD for aggressive panhandling Washington, D.C. (D.C. Code § 22-2302(a)).

**139.**   The arresting officers saw Mr. Hall was walking up and down the median in the middle of Bladensburg Road, NE in the 1200 block panhandling occupants and operators of cars in an aggressive manner.

**140.**   The officers arrested and detained Mr. Hall for about 30 minutes.

### Mr. Hall arrested, detained, and given a PD 61 citation

**141.**   The MPD officers issued Mr. Hall a PD 61 citation which required him to go to the MPD 5th District station within two weeks and either pay a "post and forfeit" fine or request a trial date in Superior Court, and then released him.

### Mr. Hall charged and prosecuted initiated; prosecution dismissed

**142.**   Nine days later on January 30, 2018, Mr. Hall did go to the 5th District station. He spent over an hour there while the MPD officer processed his paperwork.

**143.**   The MPD officer told him that because he was arrested for and charged with aggressive panhandling there was no "post and forfeit" option so they assigned him a court date for arraignment, March 6, 2018.

**144.**   Mr. Hall did appear in Superior Court on March 6, 2018 only to be told that the case was "no papered."

### Mr. Hall on February 20, 2018

**145.**   On February 20, 2018, Mr. Hall was panhandling in the 1st District police area in the median near 9th St N.W. & New York Ave N.W. by holding up a sign.

**146.**   Mr. Hall was approached by Officer MPD Officer T Green who told him to leave or he would "lock him up". Officer Green demanded his sign, and Mr. Hall gave it to him.

**147.**   Mr. Hall chose leaving as opposed to arrest.

**148.**   Mr. Hall wants to continue panhandling but he fears arrest.

### Other arrests for panhandling released without charge or collection "post and forfeit" fines

**149.**   The MPD continues to make arrests under the panhandling statute including the aggressive panhandling provision and the public transportation provision but the arrestees are either not charged (including not processed under the "post and forfeit" statute) or prosecuted under the unlawful arrest statute.

### The D.C. Panhandling Statute is Facially Unconstitutional under the 1ˢᵗ Amendment

**150.**   Regulation of speech is "content based" if a law applies to particular speech because of the topic discussed or the idea or message expressed.

**151.**   Such a statute "must be narrowly tailored to promote a compelling Government interest," and "the least restrictive means" necessary for achieving the government's purpose.

**152.**   Panhandling is expressive conduct that is protected 1st Amendment activity.

**153.**   The definition section of the statute at D.C. Code § 22-2301(2) defines "[a]sk, beg, or solicit alms" in all of its applications as including "the spoken, written, or printed word or such other act conducted for the purpose of obtaining an **immediate donation** of money or thing of value." (emphasis added).

**154.**   Barring requests for money now, but not regulating requests for money later, is a form of content discrimination.

**155.**   Singling out the topic or subject matter of soliciting alms for oneself as the panhandling statute does is also a content based regulation.

**156.**   A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of *animus* toward the ideas contained in the regulated speech.

**157.**   A speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter.

**158.**   The D.C. panhandling statute violates the First Amendment of the United States Constitution because it is not "narrowly tailored to promote a compelling Government interest," and there are "less restrictive alternatives that would serve the Government's purpose."

**159.**   On information and belief the only parts of the Council of the District of Columbia, Council Period X, Tenth Legislative Meeting, Transcript (June 1, 1993)  and the Council of the District of Columbia, Report of the Committee on the Judiciary Bill 10-72, The Panhandling Control Act of 1993 (May 12, 1993) ("Council Documents") which the District possesses are the portions quoted in the District of Columbia Court of Appeals case, <u>McFarlin v. District of Columbia</u>, 681 A.2d 440, 448 (D.C. 1996).

**160.**   In this litigation the District has not produced any other documents containing deliberations or reports of the D.C. Council explaining why the D.C. Council enacted the panhandling statute or other alternatives it considered before enacting the panhandling statute.

**161.**   For example, nothing in the available text of the Council Documents which the District cites to show any consideration by the D.C. Council of enforcing existing generic criminal laws already on the books in this jurisdiction or enacting new criminal laws that directly target conduct that threatens the District's asserted interests rather than employing regulations that indirectly support those interests by directly burdening protected speech.

**162.**   Nothing in the Council Documents or any other source shows that the District "seriously" tried using existing generic criminal laws and found them inadequate or that the District considered and rejected generic civil or criminal laws from other jurisdictions or considered enacting new laws such as model laws.

### The "above ground" free areas of the WMATA Metro stations are public forums

**163.**   The "above ground" free areas of the WMATA Metro stations are public forums.

**164.**   The McFarlin zones are inside of the "above ground" free areas of the WMATA Metro stations because they are in the areas covered by the WMATA use regulations.

**165.**   The current version of the WMATA regulations (including Section 100.10 Free Speech Activities) is available on WMATA's website and is incorporated by reference herein. Regulations Concerning the Use of WMATA Property and Related Board Resolutions (the "WMATA regulations"). https://www.wmata.com/about/records/public_docs/upload/UseRegulations.pdf

**166.**   Section 100.10, Free Speech Activities, in the current version is identical to the passage relied on by the McFarlin Court.

**167.**  Each of Messrs. Bryant, Gatling and White was in the "above ground" free area of a Metro station when they were engaged in the panhandling for which the Metro Transit Police arrested them.

**168.**  Mr. Gatling was inside the <u>McFarlin</u> zone of the Metro station when he was engaged in the panhandling for which the Metro Transit Police arrested him pursuant to D.C. Code § 22-2302(b) (panhandling in a Metro station).

**169.**  Mr. White was not inside the <u>McFarlin</u> zone of the Metro station when he was engaged in the panhandling for which the Metro Transit Police arrested him under color of D.C. Code § 22-2302(b) (panhandling in a Metro station).

**170.**  Mr. Bryant was either inside or outside of the <u>McFarlin</u> zone when he was engaged in the panhandling for which the Metro Transit Police arrested him.

**171.**  Each member of the Arrest/ Detention Class arrested or charged under D.C. Code § 22-2302(b) for panhandling within a Metro station was inside of the "above ground" free area of a Metro station when they were engaged in the panhandling conduct for which they were arrested.

Substantive Allegations for Claims

Claim 1

Arrest/ Detention Claim

**172.**  Elbert Lee Brown, Michael Lemeul Holland, Louis White, Reginald Bryant, Marc Gatling, and Jomo Kenyatta Hall, the Arrest/ Detention Named Plaintiffs, adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**173.**  The Arrest/ Detention Named Plaintiffs bring this claim pursuant to § 1983 to enforce their rights under the First Amendment.

**174.**  Mr. Gatling, Mr. White, and each of the other members of the Arrest/ Detention Class arrested or charged under D.C. Code § 22-2302(b) for panhandling within a Metro station were in

the "above ground" free areas of a Metro station at all times when they were engaged in the panhandling conduct for which they were arrested.

**175.**   The District enforced its unconstitutional panhandling statute against the Arrest/ Detention Named Plaintiffs and the other Arrest/ Detention Class members in violation of their 1st Amendment rights by arresting and detaining them or by causing their arrests with its unconstitutional statutes.

**176.**   The District enforced its unconstitutional panhandling statute against the Arrest/ Detention Named Plaintiffs' and the other Arrest/ Detention Class members directly through its MPD which arrested and detained people pursuant to its unconstitutional panhandling statute.

**177.**   The District also enforced its unconstitutional panhandling statute against other Arrest/ Detention Class members indirectly through other police forces by enabling other police forces in the District to arrest and detain them pursuant to its unconstitutional panhandling statute. The District is liable for the arrest and detention of such people because they were arrested under a statute enacted by the D.C. Council and enforced by the District as described herein.

**178.**   Certain members of the Arrest/ Detention class arrested under color of D.C. Code § 22-2302(b) (panhandling within a Metro station) were actually outside of the McFarlin zones when they were engaged in the panhandling conduct for which they were arrested. Nonetheless the District is liable for their arrests because they were arrested under color of a District of Columbia statute which the D.C. Council did not revise to reflect the limiting gloss imposed on the statute by the District of Columbia Court of Appeals in McFarlin.

**179.**   The District received into custody, processed, and detained persons arrested by other police forces in the District pursuant to its unconstitutional panhandling statute. The District is liable for detaining such persons even if it is not liable for the actual arrests.

**180.**   The moving force of the constitutional violations was the District's enactment and enforcement of its unconstitutional panhandling statute.

**181.**   With respect to any person arrested under color of Section 2302(b) who was not within a <u>McFarlin</u> zone when they were engaged in the panhandling conduct for which they were arrested the moving force of the constitutional violations was the District's enactment and enforcement of Section 22-2302(b) of its unconstitutional panhandling statute and its failure to revise Section 22-2302(b) to reflect the <u>McFarlin</u> Court's gloss of the section.

**182.**   The Arrest/ Detention Named Plaintiffs and the other Arrest/ Detention Class members suffered humiliation, emotional distress, physical harm, loss of earnings, general damages, and legal expenses that resulted from being arrested and/or detained because of the District's enactment and enforcement of its unconstitutional panhandling statute.

**183.**   The Arrest/ Detention Named Plaintiffs and the other Arrest/ Detention Class members are therefore entitled to monetary compensation and the other relief described herein.

Claim 2

**Outside Arrest Claim**

**184.**   Mr. White adopts by reference the contents of the preceding paragraphs as if fully set forth herein.

**185.**   Mr. White brings this claim pursuant to § 1983 to enforce his rights and the rights of any other person who was in the "above ground" free areas of a Metro station but outside of a <u>McFarlin</u> zone when they were engaged in the panhandling conduct for which they were arrested under color of D.C. Code § 22-2302(b) (panhandling  within a Metro station).

**186.**   The District charged and detained Mr. White under color of D.C. Code § 22-2302(b) (panhandling  within a Metro station) even though he was outside of the <u>McFarlin</u> zones when he was engaged in the panhandling conduct for which he was arrested.

**187.**   On information and belief the District charges and detains any persons arrested under color of D.C. Code § 22-2302(b) (panhandling within a Metro station) even when such persons were outside of the <u>McFarlin</u> zones when they were engaged in the panhandling conduct for which they were arrested.

**188.**   For instance, the <u>Gerstein</u> in Mr. White's case states that Mr. White was at the entrance in the NOMA-Gallaudet U Metro Station when he was panhandling, and both entrances in the NOMA-Gallaudet U Metro Station are more than 15 feet from the fare turnstiles, and the escalators leading to the train platforms are on the far side of the turnstiles.

**189.**   So any person who works in that MPD District should know that Mr. White was more than 15 feet from the escalators when he was engaged in the panhandling conduct for which he was arrested.

**190.**   Moreover the District's processing of Mr. White on the panhandling charge did not appear to cause any objections because it was business as usual. He was detained, charged, held overnight, and his case was papered by the OAG on the basis of a <u>Gerstein</u> that did not expressly state that he was within 15 feet of the escalator entrance/ exit.

**191.**   Moreover, on information and belief the informations the OAG uses to prosecute panhandling in the metro cases track the language of the statute without alleging whether a panhandler was inside or outside of the <u>McFarli</u>n zones.

**192.**   On information and belief MPD employees charge and detain such persons because the MPD does not provide training to its employees that Section 22-2302(b) (panhandling within a Metro station) has been judicially narrowed to apply only to the <u>McFarli</u>n zones in Metro stations even though the need for such training is obvious.

**193.**   For example, the MPD has no current written directives (such as General Orders, Special Orders, Circulars, Standard Operating Procedures, Bureau/Division Orders) informing officers or

other employees that although Section 22-2302(b) remains on the books as enacted by the D.C.

Council in November 17, 1993, three years later in 1996 the District of Columbia Court of

Appeals in <u>McFarlin</u> construed the term "subway station" to mean with 15 feet of the entrances/

exits of escalators.

**194.**   Processing and detaining persons who were arrested for panhandling in the "above ground"

free areas of a Metro station who were outside the <u>McFarlin</u> zones when they were engaged in the

panhandling conduct for which they were arrested violates such persons' 1st Amendment rights.

**195.**   Mr. White and any other such persons described in this claim are therefore entitled to

monetary compensation and the other relief described herein.

Claim 3

First Amendment Prosecution Claim

**196.**   The preceding paragraphs are incorporated as though fully stated herein.

**197.**   The Prosecution Named Plaintiffs bring this claim pursuant to § 1983 to enforce their

rights under the First Amendment.

**198.**   The District enforced its unconstitutional panhandling statute against the Prosecution

Named Plaintiffs and the other Prosecution Class members in violation of their 1st Amendment

rights by prosecuting them through its OAG for alleged violations of the panhandling statute under

Sections 22-2302(a), 22-2302(b), or 22-2302(d) of the panhandling statute.

**199.**   The moving force of the constitutional violations was the District's enactment and

enforcement of its unconstitutional panhandling statute.

**200.**   The Prosecution Class Named Plaintiffs and the other Prosecution Class members

suffered loss of liberty, humiliation, emotional distress, physical harm, loss of earnings, general

damages, and legal expenses that resulted from being prosecuted because of the District's

enactment and enforcement of its unconstitutional panhandling statute.

**201.**   The Prosecution Class Named Plaintiffs and the other Prosecution Class members are therefore entitled to monetary compensation and the other relief described herein.

**Rule 23 Class Allegations**

**The Arrest Class and the Prosecution Class**

**202.**   The Arrest/ Detention Named Plaintiffs and the Prosecution Class Named Plaintiffs on behalf of themselves and all members of the Arrest/ Detention Class and the Prosecution Class bring this action under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following three classes consisting of:

**203.**   **Arrest / Detention Class**: (i) each person who in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was arrested for an alleged violation of 22-2302(a), 22-2302(b), or Section 22-2302(d) of the panhandling statute, detained by the District for an alleged violation of 22-2302(a), 22-2302(b), or Section 22-2302(d) of the panhandling statute, or arrested and detained by the District for a violation of Section 22-2302(a), 22-2302(b), or Section 22-2302(d) of the panhandling statute. This Arrest/ Detention Class includes a person arrested for a violation of Section 22-2302(b) of the panhandling statute whether the person were arrested for panhandling inside or outside of the McFarlin zones of a Metro station.

**204.**   **Prosecution Class**: (i) in the period beginning three years before the date of filing of the original complaint in this case and going forward until the case is terminated; (ii) was prosecuted for a violation Section 22-2302(a), 22-2302(b), or Section 22-2302(d) of the panhandling statute; (iii) by the OAG.

**205.**   Certification of these classes under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has

uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

**206.**   The Named Plaintiffs and the Arrest/ Detention Class and Prosecution Class are entitled to injunctive relief including an injunction prohibiting enforcement of the panhandling statute and sealing of the arrest and prosecution records of class members for their arrests and prosecutions under the panhandling statute.

**207.**   The Named Plaintiffs and the Arrest/ Detention and Prosecution Classes are entitled to declaratory judgment against the District that D.C. Code § 22-2301(2) is facially unconstitutional and their arrests on panhandling charges are a nullity and sealing their arrest and prosecution records, and establishing the right to the return of their money and property.

**208.**   Certification of these classes under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior to any other means for the fair and efficient adjudication of these class claims, as detailed below.

**209.**   The Named Plaintiffs and the Arrest/ Detention and Prosecution Classes are entitled to monetary relief.

**210.**   Regarding the Named Plaintiffs and the Arrest/ Detention and the Prosecution Class, there are no individual questions on the issue of liability, because all members of these classes are injured by the same policy and practices.

**211.**   Among the questions of law and fact common to the classes are:

> **a)**      whether criminalizing requests for money now, but not regulating requests for money later, is a form of content discrimination;

> **b)**      whether criminalizing requests for money for oneself, but not regulating other topics of speech, is a form of content discrimination

c)      whether the District violates the First Amendment by arresting and detaining or prosecuting someone under the panhandling statute;

d)      whether the District through the OAG violates the First Amendment by prosecuting someone under the panhandling statute.

**212.** Each of the Arrest/ Detention Class and the Prosecution Class is so numerous that joinder of all members these class is impracticable.  The exact numbers of the members of the Arrest/ Detention Class and the Prosecution Class members is unknown to the named plaintiffs at this time but the number of persons arrested and the number of persons prosecuted for panhandling each year is readily determinable from MPD and court records.

**213.** Mr. Brown, Mr. Holland, Mr. White, Mr. Bryant, Mr. Hall's and Mr. Gatling's claims are typical of the claims of the other members of the Arrest/ Detention Class, and Mr. Brown, Mr. Holland, Mr. White, Mr. Hall, and Mr. Gatling's claims are typical of the claims of the other members of the Prosecution Class because all named plaintiffs and the other members of each of the classes were injured by exactly the same means, the unconstitutionality of the panhandling statute.

**214.** The Named Plaintiffs on behalf of themselves and the other members of the Arrest Class and the Prosecution Class will fairly and adequately protect the interests of the members of the classes, and, as well, they have retained counsel who is competent and experienced in complex federal civil rights class action litigation.

**215.** The Named Plaintiffs on behalf of themselves and the Arrest Class and the Prosecution Class have no interests that are contrary to or in conflict with those other members of each of the classes.

## Class Relief Demands

The Named Plaintiffs on behalf of themselves and the all members of all classes defined herein respectfully request that this Court grant the following relief:

**A.**          Enter judgment in their favor on all of their claims;

**B.**          Declare each of D.C. Code § 2302(a), § 2302(b), and § 2302(d) when combined with the definition of "panhandling" under Section 22-2301(2) of the panhandling statute unconstitutional under the First Amendment.

**C.**          Enjoin the District from implementing any provision of Section 2302(a), Section 2302(b) or Section 2302(d).

**D.**          Award the Named Plaintiffs and the putative class members nominal damages in connection with any declaration by this Court that Section 2302(a), Section 2302(b) or Section 2302(d) are unconstitutional under the First Amendment.

**E.**          Grant a jury trial on all claims so triable.

**F.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure, 23(a), 23(b)(2) and Rule 23(b)(3) and certifying the Arrest/ Detention Class and the Prosecution Class, and designating Mr. Brown, Mr. Holland, Mr. White, Mr. Bryant, Mr. Hall and Mr. Gatling as the proper representatives of the Arrest/ Detention Class, and designating Mr. Brown, Mr. Holland, Mr. White, Mr. Hall and Mr. Gatling as the proper representatives of the Prosecution Class, and appointing William Claiborne as class counsel of both classes.

**G.**          Award all the named plaintiffs and all class members injunctive relief in the form of sealing their relevant arrest records and declaring their arrests a nullity;

**H.**          Award all plaintiffs and class members compensatory and consequential damages in an amount to be determined at trial;

**I.**             Award plaintiffs' attorneys fees and costs incurred in bringing this action under

42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.**             Grant such other relief as this Court deems just and proper.

| | |
|---|---|
| Respectfully submitted,<br><br>/s/ William Claiborne<br>William Claiborne<br>D.C. Bar # 446579<br><br>Counsel for Named Plaintiffs on behalf of themselves and the putative class members<br><br>ClaiborneLaw<br>717 D Street, N.W<br>Suite 300<br>Washington, DC 20004<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.

/s/William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Plaintiffs and the Classes