# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELBERT L. BROWN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil No. 15-cv-1380 (KBJ) |
| | ) |
| GOVERNMENT OF THE DISTRICT | ) |
| OF COLUMBIA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In the case of *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), the

Supreme Court of the United States applied strict scrutiny to evaluate whether an

ordinance that restricted town members' displays of outdoor signs based on the

communicative content of those signs violated the First Amendment of the Constitution

of the United States. *See id.* at 2231. The Supreme Court held that content-based laws

governing speech in public forums "are presumptively unconstitutional and may be

justified only if the government proves that they are narrowly tailored to serve

compelling state interests." *Id.* at 2226. According to Plaintiffs in the instant case,

*Reed* compels the conclusion that the District of Columbia's Panhandling Control Act

("the Act"), D.C. Code §§ 22-2301–2306, is constitutionally invalid. Plaintiffs were

arrested for asking passersby for money in certain public places in the District of

Columbia in contravention of three provisions of the Act (which criminalizes

panhandling and no other types of solicitation), and much like the town residents in

*Reed*, Plaintiffs maintain that the Act imposes content-based restrictions on speech that

do not survive strict scrutiny. (*See* Fifth Am. Compl. ("5AC"), ECF No. 61, at ¶¶ 150–62.)

Before this Court at present is Defendant District of Columbia's ("the District's") Motion to Dismiss Plaintiffs' Fifth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Mot. to Dismiss Pls.' Fifth Am. Compl. ("Def.'s Mot."), ECF No. 63.) The District's primary argument is that Plaintiffs fail to state a claim as a matter of law because the Panhandling Control Act is not a content-based statute, and therefore strict scrutiny does not apply. (*See id.* at 18–22; *see also* Def.'s Reply in Support of Def.'s Mot. ("Def.'s Reply"), ECF No. 65, at 8–10.)[1] The District further maintains that, even if the challenged subsections of the Panhandling Control Act are content-based regulations that have been applied to regulate conduct in a public forum, these statutory provisions are narrowly tailored to serve compelling government interests such that they survive strict scrutiny, and, therefore, comport with the First Amendment. (*See* Def.'s Mot. at 22–26; Def.'s Reply at 10–13.)

On March 29, 2019, this Court issued an Order that **DENIED** Defendant's motion to dismiss. (*See* Order, ECF No. 69.) This Memorandum Opinion explains the reasons for that Order. In short, the Court has concluded that the District's Rule 12(b)(6) arguments are not viable at the motion-to-dismiss stage of this case, insofar as they attack the merits of Plaintiffs' constitutional challenge rather than the sufficiency of Plaintiffs' complaint. The Court has also found that, when accepted as true, Plaintiffs' allegations are sufficient to state a plausible Section 1983 First Amendment claim. *See* 42 U.S.C. § 1983. Therefore, the District's motion to dismiss has been

---

[1] Page-number citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

denied, and Plaintiffs' claims challenging the constitutionality of sections 22-2302(a), 22-2302(b), and 22-2302(d) of the Panhandling Control Act have been allowed to proceed.

## I.    BACKGROUND

### A.    Factual History

The District of Columbia criminalizes panhandling by statute. *See* D.C. Code §§ 22-2301–2306. The Panhandling Control Act defines panhandling as "ask[ing], beg[ging], or solicit[ing] alms," and this definition "includes the spoken, written, or printed word or such other act conducted for the purpose of obtaining an immediate donation of money or thing of value[.]" D.C. Code § 22-2301(2). Notably, the Act expressly prohibits such conduct in eight specified circumstances. *See id.* at § 22-2302.

As relevant here, subsection (a) of section 22-2302 provides that "[n]o person may ask, beg, or solicit alms, including money and other things of value"—that is, panhandle—"in an aggressive manner in any place open to the general public, including sidewalks, streets, alleys, driveways, parking lots, parks, plazas, buildings, doorways and entrances to buildings, and gasoline service stations, and the grounds enclosing buildings." D.C. Code § 22-2302(a). (*See* 5AC at ¶¶ 6, 12, 36, 41, 90, 138.)[2] Subsection (b) prohibits panhandling "in any public transportation vehicle[] or at any bus, train, or subway station or stop[,]" D.C. Code § 22-2302(b), and the D.C. Court of Appeals has held that the "subway station or stop" part of this provision applies to the

---

[2] The statute further defines "aggressive manner" as "[a]pproaching, speaking to, or following a person in a manner as would cause a reasonable person to fear bodily harm or the commission of a criminal act upon the person, or upon property in the person's immediate possession[,]" "[t]ouching another person without that person's consent in the course of asking for alms[,]" "[c]ontinuously asking, begging, or soliciting alms from a person after the person has made a negative response[,]" or "[i]ntentionally blocking or interfering with the safe or free passage of a person by any means, including unreasonably causing a person to take evasive action to avoid physical contact." D.C. Code § 22-2301(1)(A)–(D).

area within fifteen feet of the escalator entrances to the subway, *see McFarlin v. District of Columbia*, 681 A.2d 440, 448 (D.C. 1996)—an area that has since become known as the *McFarlin* zone. (*See id.* at ¶¶ 9, 131, 168.) Finally, subsection (d) bars panhandling "from any operator or occupant of a motor vehicle that is in traffic on a public street." D.C. Code § 22-2302(d). (*See id.* at ¶¶ 7–8, 32, 41, 51–52, 60–61, 69.)

Plaintiffs Elbert L. Brown, Michael Lemeul Holland, Reginald Bryant, Marc Gatling, and Jomo Kenyatta Hall (collectively, "Plaintiffs") were each arrested for violating at least one of these provisions of the Panhandling Control Act. (*See id.* at ¶¶ 6–9.)[3] Specifically, Brown, Bryant, and Hall were arrested for violating section 22-2302(a). (*See id.* at ¶¶ 6, 12, 36, 41, 90, 138.) Gatling was arrested by Metro Transit Police for panhandling in the *McFarlin* zone in violation of section 22-2302(b). (*See id.* at ¶¶ 9, 131, 168.) And Holland and Brown were arrested in violation of section 22-2302(d). (*See id.* at ¶¶ 7–8, 32, 41, 51–52, 60–61, 69.)

Following these arrests, each plaintiff was allegedly detained, and with respect to some of them, the government also purportedly and permanently confiscated the money on their person. (*See id.* at ¶¶ 36–97, 121–48.) For present purposes, the facts pertaining to each plaintiff's post-arrest circumstances are not material; it suffices to note that all of the named plaintiffs were allegedly arrested by District or Metro law enforcement officers and were detained for some period of time, and that Brown, Holland, Bryant, and Gatling were further prosecuted in Superior Court for their

---

[3] The facts recited in this opinion are gleaned from Plaintiffs' Fifth Amended Complaint, and this Court has treated the complaint's allegations as true for the purpose of resolving the instant motion to dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

panhandling offenses.  (*See id.*)  Hall represents that he desires to continue panhandling in the future but fears arrest.  (*See id.* at ¶ 148.)

## B.    Procedural History

Plaintiffs have filed six iterations of their complaint over the past three and a half years.  To understand the evolution of Plaintiffs' claims, and thus this Court's evaluation of the operative complaint that Defendant challenges in the instant motion to dismiss, a relatively comprehensive description of these pleadings is required.

Plaintiff Brown filed an initial, 12-page "Class Action" complaint on August 25, 2015.  (Compl., ECF No. 1.)  That complaint consisted of one claim styled as a "facial" First Amendment challenge to the Panhandling Control Act under Section 1983 of Title 42 of the United States Code ("Section 1983"), brought on behalf of Brown and all other individuals who had either been arrested, or been arrested and prosecuted, under the Panhandling Control Act.  (*See id.* at 6–10.)  On October 22, 2015, this Court granted the parties' consent motion to stay Plaintiffs' obligation to file a separate motion for class-action treatment pursuant to Local Rule 23.1(b)—a stay which remains in effect at present.  (*See* Min. Order of Oct. 22, 2015.)

On December 9, 2015, Plaintiffs filed a 26-page first amended complaint as a matter of right, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  (*See* First Am. Compl. ("FAC"), ECF No. 15; *see also* Min. Order of Oct. 28, 2015 (granting consent motion for extension of time to file an amended complaint).)  The first amended complaint added Holland, Louis Sylvester White, Bryant, and Gatling as named plaintiffs, and included a new Section 1983 claim based on Plaintiffs' "Right to Return of Money and Other Property."  (*See* FAC at 1, 19–20.)  As before, Plaintiffs styled this complaint as a "Class Action."  (*Id.* at 2.)  The District filed a motion to dismiss the

first amended complaint (*see* Def.'s Mot. to Dismiss FAC, ECF No. 18), arguing, *inter alia*, that the Panhandling Control Act is constitutional (*see* Mem. in Support of Def.'s Mot. to Dismiss FAC, ECF No. 18-1, at 15–27), and that Plaintiffs' new "Right to Return" claim failed to plead municipal liability or an underlying constitutional violation sufficiently (*see id.* at 27–31).

On July 12, 2016, this Court held a lengthy hearing regarding the District's motion to dismiss Plaintiffs' first amended complaint. (*See* Hr'g Tr., ECF No. 44.) After the hearing, the Court concluded that "amending the complaint would aid the parties and the Court in determining whether the claims here can survive a motion to dismiss," and gave Plaintiffs leave to file a second amended complaint. (*See* Order, ECF No. 24, at 1.) The Court advised Plaintiffs to ensure that claims for relief complied with Federal Rule of Civil Procedure 8's requirements, and to plead sufficient facts to support standing for each form of relief sought. (*See id*. at 1–2.) In light of this ruling, the Court denied Defendant's motion to dismiss without prejudice as moot. (*See id.* at 2.)

On August 15, 2016, Plaintiffs filed a 44-page second amended class action complaint, which added two claims, purportedly pleaded "in the alternative," relating to the named Plaintiffs' arrest and prosecution. (*See* Second Am. Compl., ECF No. 25, at 24–31.) Defendant again moved to dismiss the complaint, this time adding arguments about Plaintiffs' lack of standing in addition to its prior positions regarding the legality of the Panhandling Control Act and the multiple deficiencies of the "Right to Return" claim. (*See generally* Def.'s Mot. to Dismiss Second Am. Compl., ECF No. 27.) The Court granted Plaintiffs' subsequent motion for leave to file a third amended complaint,

and as a result, denied Defendant's motion as moot. (*See* Minute Order of October 12, 2016; *see also* Pls.' Mot. to Amend the Second Am. Compl. and to File Third Am. Compl., ECF No. 29, at 4–6.)

On October 12, 2016, Plaintiffs filed a 45-page third amended complaint. (*See* Third Am. Compl., ECF No. 31.)[4] This class action complaint included six claims against the District pursuant to Section 1983: a First Amendment challenge to the Panhandling Control Act; two claims pleaded "in the alternative" challenging Plaintiffs' arrests as violative of the First Amendment; and three claims challenging Plaintiffs' arrests and detention under the Fourth and Fifth Amendments. (*See id.* at 23–33.) Defendant filed its third motion to dismiss the complaint, renewing its arguments in opposition to the First Amendment challenge and further arguing that Plaintiffs had failed to state a claim upon which relief could be granted based on the alleged Fourth and Fifth Amendment violations. (*See* Def.'s Mot. to Dismiss Third Am. Compl., ECF No. 33, at 1–2.)

On July 20, 2017, the Court held another lengthy hearing, after which it took Defendant's motion under advisement. (*See* Min. Entry of July 20, 2017.) On August 29, 2017, Plaintiffs filed a motion to dismiss voluntarily one of the claims in the third amended complaint (*see* Pls.' Mot. to Dismiss Claim 3, ECF No. 41), and because voluntary dismissal of part of a complaint by a plaintiff who seeks to continue pursuing other claims in the case can only be achieved through amendment, the Court construed Plaintiffs' motion for voluntary dismissal of a claim as a motion for leave to amend,

---

[4] Plaintiffs styled this iteration of their pleading as a "Second Amended Class Action Complaint" (Third Compl. at 2), but it was properly docketed as the "Third Amended Complaint" (Dkt. Entry Text for ECF No. 31).

and so construed, granted the motion, over the District's objection (*see* Order, ECF No. 43, at 1–2). Having thereby provided Plaintiffs with another opportunity to amend their pleading, the Court then denied the District's motion to dismiss as moot. (*See id.* at 2.)

On September 19, 2017, Plaintiffs filed a 35-page fourth amended class action complaint. (*See* Fourth Am. Compl., ECF No. 47.) This complaint included one claim challenging the Panhandling Control Act under the First Amendment, and three claims pleaded "in the alternative" challenging Plaintiffs' arrests and detention in violation of the First, Fourth, and Fifth Amendments. (*See id.* at 22–27.) Defendant filed yet another motion to dismiss, maintaining that the Panhandling Control Act is constitutional and arguing, *inter alia*, that Plaintiffs had not sufficiently pleaded municipal liability for the three alternative claims. (*See* Def.'s Mot. to Dismiss Fourth Am. Compl., ECF No. 48, at 1–2.)

Several months later, Plaintiffs filed an opposed motion for leave to amend their complaint once more, this time based on the addition of a new named plaintiff as well as proposed clarification of their claims based on legal issues raised through the first three years of the case. (*See* Pls.' Mot. for Leave to Amend Fourth Am. Compl. and to File Fifth Am. Compl., ECF No. 57, at 2.) On April 30, 2018, the Court granted Plaintiffs' motion for leave to amend, and denied Defendant's motion to dismiss, as moot, for the fourth and final time. (*See* Order, ECF No. 60, at 2.) In so ruling, the Court also specifically emphasized that "*this will be the final amendment to the complaint that Plaintiffs are permitted to make*[.]" (*Id.* (emphasis in original).)

On April 30, 2018, Plaintiffs filed the 31-page fifth amended class action complaint that is the operative pleading to date, and also the subject of the instant

ruling.  (*See* 5AC.)  Plaintiffs' fifth amended complaint contains three claims

challenging sections 22-2302(a), 22-2302(b), and 22-2302(d) of the Panhandling

Control Act as violative of the First Amendment, each of which is brought pursuant to

Section 1983, but only two of these claims are relevant here.[5]  One is titled

"Arrest/Detention Claim" and purportedly relates to the experiences of those named

plaintiffs who were arrested and detained in alleged violation of one of the three

challenged provisions of the Act.  (*See id.* at ¶¶ 172–83, 203 (Claim 1).)  The other is

titled "First Amendment Prosecution Claim" and purportedly pertains to those named

plaintiffs who were not only arrested and detained but also prosecuted for an alleged

violation of one of the three challenged provisions of the Act.  (*See id.* at ¶¶ 196–201,

204 (Claim 3).)  Plaintiffs seek to maintain these two Section 1983 claims for

themselves and also on behalf of similarly situated "arrest" and "prosecution" class

members.  (*See id.* at ¶¶ 172–74, 182–83, 197–98, 200–01.)  And they have requested

various forms of relief, including a declaration that the Panhandling Control Act is

unconstitutional; an injunction that prohibits the District's future enforcement of the

Act; an injunction that seals and nullifies records related to Plaintiffs' arrests; and

money damages.  (*See id.* at 30–31.)

The District filed a motion to dismiss Plaintiffs' fifth amended complaint on May

31, 2018.  (*See* Def.'s Mot.)  In this motion, the District reasserts its position that the

Act comports with the First Amendment, either (1) because strict scrutiny does not

---

[5] One of the three claims relates solely to the detention of Plaintiff Louis Sylvester White, who was allegedly arrested by Metro police when he was panhandling in an area beyond 15 feet of the entrance to a Metro station (i.e., outside the *McFarlin* zone).  (*See* 5AC at ¶¶ 184–95 (Claim 2).)  White has subsequently voluntarily dismissed his claims in this action pursuant to Federal Rule of Civil Procedure 41(a)(1) on May 30, 2018.  (*See* Pl. White's Notice of Dismissal of All Claims, ECF No. 62.) Therefore, Claim 2 has been dismissed from this case.  (*See* Pls.' Opp'n to Def.'s Mot., ECF No. 64, at 48 (citing *Miniter v. Sun Myung Moon*, 736 F. Supp. 2d 41, 44 n.7 (D.D.C. 2010)).)

apply (*see, e.g.*, *id.* at 16–18 (arguing that section 2302(b)—which prohibits panhandling in the above-ground areas within fifteen feet of the escalator entrances to subway stations—does not regulate a public forum, and thus strict scrutiny is inapplicable with respect to that provision); *id.* at 18–22 (arguing that the Act is content neutral, and thus strict scrutiny is inapplicable)), or (2) because the challenged provisions survive strict scrutiny (*see, e.g.*, *id.* at 22–26 (arguing that "the challenged provisions are narrowly tailored to serve compelling governmental interests")). The District's motion also suggests that Plaintiffs' "arrest" claims (Claim 1) and their "prosecution" claims (Claim 3) are impermissibly duplicative. (*See id.* at 26–27; Def.'s Reply at 13–14.)[6] Plaintiffs have opposed the District's motion to dismiss, renewing their longstanding argument that the Act violates the First Amendment because it cannot withstand the strict scrutiny that must be applied because the statute is content-based and regulates protected speech in public forums. (*See* Pls.' Opp'n to Def.'s Mot. ("Pls.' Opp'n"), ECF No. 64, at 12–47.)[7]

The District's motion to dismiss became ripe for the Court's review on June 19, 2018. (*See* Def.'s Reply.)

---

[6] The Court notes that the District no longer challenges Plaintiffs' standing to maintain a facial attack on the statute. (*Compare, e.g.*, Def.'s Mot. to Dismiss Second Am. Compl., ECF No. 27-1, at 18–19 *with* Def.'s Mot.) Nothing in the instant ruling should be construed as a determination that the allegations in Plaintiffs' complaint will be construed as a facial challenge. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016); *see also Doe v. Reed*, 561 U.S. 186, 194 (2010). The determination of whether the complaint properly seeks invalidation of the challenged provisions on their face or as applied will be made later. *See id.*

[7] Plaintiffs filed a notice informing the Court that they did not seek another hearing on Defendant's motion. (*See* Pls.' Notice, ECF No. 66.)

## II. LEGAL STANDARDS

### A. Motions To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)

A complaint "serve[s] [the] specific functions of giving notice of 'the general nature of the case and the circumstances or events upon which it is based,' so the parties can prepare and the court can dispose of the case properly." *Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 16 (D.C. Cir. 2008) (quoting Charles E. Clark, *Simplified Pleading*, 2 F.R.D. 456, 457, 460 (1943)); *see also Richardson v. Cash Money Records, Inc.*, 550 Fed. Appx. 9, 10 (D.C. Cir. 2013) (per curiam) ("A complaint must give the defendant notice of the claim and the grounds upon which it rests."). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the adequacy of this notice, and requires the Court to consider whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The moving party bears the burden of demonstrating that a complaint is legally insufficient, *see Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016), and the "court must accept as true all of the allegations contained in a complaint[,]" but this tenet "is inapplicable to legal conclusions[,]" *Harris*, 791 F.3d at 68 (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Moreover, when resolving a motion to dismiss under Rule 12(b)(6), a court is limited to the "four corners of the

complaint, as well as any documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies[,]" *Tyson v. Brennan*, 306 F. Supp. 3d 365, 369 (D.D.C. 2017) (internal quotation marks, alteration, and citation omitted), and facts of which the Court may take judicial notice, *Ashbourne v. Hansberry*, 245 F. Supp. 3d 99, 103 (D.D.C. 2017), *aff'd*, 894 F.3d 298 (D.C. Cir. 2018).

In limited circumstances, a Court may be able to resolve a purely legal question at the motion-to-dismiss phase. *See, e.g.*, *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (explaining that where a motion to dismiss presents "purely legal question . . . there is no inherent barrier to reaching the merits at the 12(b)(6) stage"); *R.J. Reynolds Tobacco Co. v. U.S. Dep't of Agric.*, 130 F. Supp. 3d 356, 369 (D.D.C. 2015) ("[A] Rule 12(b)(6) motion to dismiss can be entertained in administrative law cases if the complaint presents no factual allegations, but rather only arguments about the legal conclusions to be drawn about the agency action." (internal quotation marks, punctuation, alterations, and citation omitted)). However, in most cases, motions to dismiss are limited to the purported deficiencies of a plaintiff's communication of its allegations in the complaint—in other words, the adequacy of the notice. Thus, it is well established that the Court's analysis of any applicable defenses advanced in opposition to claims that have been properly pleaded are to be reserved for later stages of litigation, such as summary judgment or trial. *See, e.g.*, *Major v. Plumbers Local Union No. 5 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipe-Fitting Indus. of U.S. & Can., AFL–CIO*, 370 F. Supp. 2d 118, 127–28 (D.D.C. 2005) (finding it inappropriate to consider a defense of laches in the context of a motion

to dismiss because it would require further factual development); *United States v. Newman*, No. 16-cv-1169, 2017 WL 3575848, at *6 (D.D.C. Aug. 17, 2017) (declining to consider a defense based on the statute of limitations at the motion-to-dismiss phase where the complaint did not contain necessary facts relevant to that affirmative legal defense on its face).

### B. Plausible Claims That Challenge Government Regulation On First Amendment Grounds

Courts generally approach First Amendment challenges to statutes and regulations by (1) "determining whether the First Amendment protects the speech at issue"; (2) "identifying the nature of the forum"; and (3) "assessing whether the [government's] justifications for restricting [the] speech satisfy the requisite standard." *Mahoney v. Doe*, 642 F.3d 1112, 1116 (D.C. Cir. 2011) (internal quotation marks and citation omitted). This analysis involves both factual and legal determinations about the speech that is being regulated, the nature of the forum, the government's interests, and the tailoring of the imposition on protected speech. *See, e.g.*, *In re Goode*, 821 F.3d 553, 559 (5th Cir. 2016) ("Whether the First Amendment has been violated is a mixed question of law and fact[.]"); *Gerritsen v. City of Los Angeles*, 994 F.2d 570, 575 (9th Cir. 1993) ("First Amendment questions . . . present mixed questions of law and fact, requiring us to apply principles of First Amendment jurisprudence to the specific facts of the case." (internal quotation marks, alteration, and citations omitted)).

Thus, courts typically do not reach the *merits* of a First Amendment challenge at the motion-to-dismiss stage. *See, e.g.*, *Boardley v. U.S. Dep't of the Interior*, 615 F.3d 508, 519–25 (D.C. Cir. 2010) (reversing a district court's grant of summary judgment after engaging in an extensive factual and legal analysis of the government's interests in

regulating speech); *Initiative & Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299, 1313–14 (D.C. Cir. 2005) (discussing the factual considerations relevant to whether a sidewalk is a public forum in reviewing denial of a summary judgment motion); *Cmty. for Creative Non-Violence v. Turner*, 893 F.2d 1387, 1395–96 (D.C. Cir. 1990) (describing the material facts relevant to the tailoring inquiry and reversing summary judgment because the trial court failed to resolve them). Instead, courts must conclude that a plaintiff sufficiently pleads a First Amendment claim that survives a Rule12(b)(6) challenge when, as relevant here, the complaint includes factual allegations that plausibly support that a statute or regulation is a content-based restriction that affects protected speech in a public forum, and that the statute or regulation is not narrowly tailored to promote a compelling government interest. *See Reed*, 135 S.Ct. at 2226. *Cf. BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 36 (D.D.C. 2013) (finding that First Amendment challenge to content-based regulation could not survive Rule 12(B)(6) because Plaintiff failed to allege any restrictions whatsoever based on content).

## III.   ANALYSIS

The operative complaint in the instant action alleges that certain provisions of the D.C. Panhandling Control Act violate the First Amendment. As explained below, this Court concludes that Plaintiffs have sufficiently alleged plausible First Amendment claims upon which relief can be granted, and this is especially so in light of the overwhelming run of authority from across the country striking down similar panhandling regulations since the Supreme Court's decision in *Reed*. *See, e.g.*, *Norton v. City of Springfield, Ill.*, 806 F.3d 411, 411–13 (7th Cir. 2015) (finding that an ordinance barring immediate requests for money is content-based and unlawful in light of *Reed*); *Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 233–35, 237–38 (same,

after Supreme Court vacated and remanded for consideration in light of *Reed*); *Blitch v. City of Slidell*, 260 F. Supp. 3d 656, 666, 674 (E.D. La. 2017) (explaining that "*Reed* . . . mandates strict scrutiny" of panhandling regulations and striking down a similar ordinance). The District's Rule 12(b)(6) motion fails because Plaintiffs' complaint contains adequate allegations to support their First Amendment claims, and the District's Rule 12(b)(6) arguments relate solely to its disagreement with Plaintiffs' factual and legal assertions. This Court will not reach the merits of the parties' dispute now, nor will it conclude that Claim 1 or Claim 3 must be dismissed as duplicative, given that, as alleged, Plaintiffs appear to seek different relief with respect to each of these claims.

### A. Plaintiffs Have Plausibly Alleged That The D.C. Panhandling Control Act Violates The First Amendment

Plaintiffs' complaint plausibly alleges a viable First Amendment claim, for several reasons. First and foremost, with respect to the First Amendment's application to the speech at issue, Plaintiffs have alleged that "[p]anhandling is expressive conduct that is protected [First] Amendment activity." (5AC at ¶ 152.) Not only is it plausible that this is so, *see, e.g.*, *Norton*, 806 F.3d at 411–13, the District concedes as much (*see* Def.'s Mot. at 15).

In regard to the nature of the forum, Plaintiffs allege that all three of the challenged provisions of the D.C. Panhandling Control Act apply to public forums. (*See* 5AC at ¶¶ 41, 51–52, 56, 60–61, 69, 74, 82–83, 123, 163–64.) To the extent that there is a disagreement regarding this characterization as it relates to the *McFarlin* zones regulated by section 22-2302(b) (*compare* Def.'s Mot. at 17 (citing *McFarlin*, 681 A.2d at 448 (holding that the above-ground areas within fifteen feet of escalator

entrances to subway stations are not public forums)) *with* Pls.' Opp'n at 23 (citing *Cmty. for Creative Non-Violence*, 893 F.2d at 1391 (holding that the above-ground free areas of subway stations are public forums)), that dispute raises a mixed question of law and fact that must await resolution at a later stage in these proceedings. *See, e.g.*, *Initiative & Referendum Inst.*, 417 F.3d at 1313–14 (considering the facts relevant to the forum analysis at summary judgment); *Brown v. Palmer*, 915 F.2d 1435, 1441 (10th Cir. 1990) (considering the "mixed question of law and fact" presented by forum analysis at summary judgment (internal punctuation and citation omitted)), *adhered to on reh'g*, 944 F.2d 732 (10th Cir. 1991). In other words, a plaintiff's allegations of fact must be accepted as true at the motion-to-dismiss stage, and Plaintiffs' contentions regarding the character of the fora to which the Act applies are not clearly precluded as a matter of law such that the complaint's "public forum" assertions cannot support a plausible claim upon which relief can be granted, as the District appears to acknowledge. (*See* Def.'s Mot. at 17 (citing *Ellis v. District of Columbia*, 84 F.3d 1413, 1420 (D.C. Cir. 1996).)

As for the nature of the government's statutory prohibitions and its justifications for limiting speech in this manner, Plaintiffs allege that strict scrutiny applies, because the Panhandling Control Act is a content-based regulation insofar as it prohibits certain speech—i.e., immediate requests for money or things of value—in public areas, based on the message communicated. (*See* 5AC at ¶¶ 153–156.) Plaintiffs further allege that the Act cannot *survive* strict scrutiny, because the statutory restrictions are not narrowly tailored to promote a compelling governmental interest. (*See id.* at ¶¶ 158–62.) Specifically, the complaint contends that there are less restrictive alternatives available

to the government, such as "enforcing existing generic criminal laws already on the books in this jurisdiction or enacting new criminal laws that directly target conduct that threatens the District's asserted interests rather than employing regulations that indirectly support those interests by directly burdening protected speech." (*Id.* at ¶ 161; *see also id.* at ¶¶ 160–62.)

It is by now well established that government regulations are content-based if they "appl[y] to particular speech because of the topic discussed or the idea or message expressed[,]" *Reed*, 135 S. Ct. at 2227, and that content-based laws that restrict protected speech are subject to strict scrutiny, *id.* Furthermore, strict scrutiny "'requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest[.]'" *Id.* at 2231 (quoting *Ariz. Free Ent. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). Thus, the complaint's First Amendment claims are plainly plausible, insofar as Plaintiffs assert that the Panhandling Control Act is both subject to strict scrutiny (because it prohibits requests for immediate donations of money in various public areas and not any other speech—i.e., it is a content-based restriction), and does not satisfy strict scrutiny (because other less restrictive alternatives are available).

This conclusion should not be taken to suggest that Plaintiffs have always clearly claimed that the Panhandling Control Act is unconstitutional. To put it mildly, the complaint in this case has developed in a haphazard manner, and the opaqueness of Plaintiffs' intentions with respect to having organized the allegations into "arrest" and "prosecution" class action claims makes the instant (sixth) pleading attempt far from a model of clarity. But the Court is satisfied that Plaintiffs have provided sufficient

notice to the District, by plausibly alleging that all three of the challenged sections of the Panhandling Control Act are content-based regulations that limit protected speech in public forums, and that these regulations cannot survive strict scrutiny because there are less restrictive alternatives available to the D.C. government.  (*See, e.g.*, 5AC at ¶¶ 150–62.)

**B.    The District's Arguments For Dismissal Are Not Relevant To The Applicable Legal Inquiry At The Motion-To-Dismiss Stage**

The District's arguments in support of its motion to dismiss relate primarily, if not exclusively, to its belief that Plaintiffs are mistaken because the Panhandling Control Act *does* satisfy the First Amendment as a matter of law.  Indeed, the motion squarely rejects the basic factual premises of Plaintiffs' First Amendment claims—that the challenged provisions are content-based restrictions of speech in a public forum and do not survive strict scrutiny because they are not narrowly tailored to serve a compelling governmental interest—and it does so by arguing, explicitly, that the statutory provisions *are* constitutional (*see, e.g.*, Def.'s Mot. at 10), given that, *inter alia*, public transportation vehicles and Metro stations (which section 22-2302(b) covers) are "nonpublic forums" (*see id.* at 16–18); sections 22-2302(a) and (d) are "content neutral" restrictions (*see id.* at 18–22); and all three challenged provisions are "narrowly tailored to serve compelling government interests" (*see id.* at 22–26).  Thus, rather than adhering to the cardinal characteristic of motions that properly test the sufficiency of the allegations of a complaint under Rule 12(b)(6), *see, e.g.*, *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 121 (D.D.C. 2018) (explaining that "[a]t [the motion-to-dismiss] stage of the proceedings, the factual allegations in the complaint must be taken as true"), the District improperly implores

the Court to dismiss Plaintiffs' complaint based on a finding that Plaintiffs' allegations regarding the nature of the forum, the character of the challenged prohibitions, and the tailoring of the statutory restrictions are *false*.

This Court must decline the District's invitation. It is clear beyond cavil that a defendant cannot ignore, or contradict, a complaint's factual allegations in a bid to seek its dismissal, no matter how strong the defendant's merits arguments might be. *See Fletcher v. U.S. Dep't of Justice*, 17 F. Supp. 3d 89, 92 (D.D.C. 2014) ("A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits[.]"); *see also Doe v. Siddig*, 810 F. Supp. 2d 127, 132 (D.D.C. 2011) (calling it "[i]nexplicabl[e]" that the defendants "completely disregarded this fundamental premise in crafting [its] Motion to Dismiss"). And the District's abandonment of Rule 12(b)(6) first principles is especially egregious where, as here, the ultimate legality of a statute is based on complex and overlapping legal and factual determinations, *see, e.g., Boardley*, 615 F.3d at 519–25 (demonstrating the extensiveness of this interrelated inquiry), with respect to which the District bears the burden of persuasion, *see Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 510 (D.C. Cir. 2016) (explaining it is the government's burden to overcoming strict scrutiny by "show[ing that] the restriction is narrowly tailored to a compelling governmental interest").

Put another way, as "a governmental body seeking to sustain a restriction on . . . speech[,]" the District must ultimately "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edwards v. District of Columbia*, 755 F.3d 996, 1003 (D.C. Cir. 2014) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993)); *see also id.* (describing the evidence that the government

must produce to meet this burden). In time, it will have ample opportunity to meet this mark. But for now, the District may request dismissal of Plaintiffs' claims only by challenging the legal *sufficiency* of Plaintiffs' pleading, as opposed to its *accuracy*. Yet, the District's arguments for dismissal of Plaintiffs' complaint are plainly and persistently aimed at the latter. (*See, e.g.*, Def.'s Mot. at 10; *see also id.* at 14–26; Def.'s Reply at 5–13.)

This Court need go no further. As the proponent of dismissal under Rule 12(b)(6), the District must demonstrate that Plaintiffs have failed to state a claim upon which relief can be granted, and its vigorous contention that Plaintiffs are *wrong* when they assert that the challenged provisions of the Panhandling Control Act regulate speech in public fora in a content-based fashion and are not narrowly tailored to achieve compelling government interests does no such thing.

## C.    At Present, It Does Not Appear That Claim 1 And Claim 3 Are Duplicative

The District also suggests that, at the very least, Claim 3 should be dismissed as duplicative of Claim 1. (*See* Def.'s Mot. at 26–27; Def.s' Reply at 13–14.) This argument is not entirely baseless, because for reasons that have not yet been fully disclosed, Plaintiffs have opted to bifurcate their core constitutional claims for damages brought against the District into one claim brought by the named plaintiffs who were *arrested* pursuant to subsections 22-2302(a), (b), and (d) of Chapter 22 of the D.C. Code, (*see* 5AC at ¶¶ 172–83 (Claim 1)), and another claim brought by the named plaintiffs who were not only arrested but were also *prosecuted* for panhandling pursuant

to those same sections of the D.C. Code (*see id.* at ¶¶ 196–201 (Claim 3)).[8]  This structure is not intuitive, and may not be a model of clarity, as the Court has already expressed, but the Court is not convinced that it results in impermissible duplication of claims, and thus, both claims will be allowed to proceed, for now.

To be sure, the District is correct that a district court may exercise its discretion to dismiss claims "that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available."  *Wultz v. Islamic Rep. of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) (citation omitted); *see also DTCC Data Repository LLC v. U.S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 18–19 (D.D.C. 2014).  And it is true that an entirely coherent theory as to the differences between these legal claims has not yet been presented.  (*See* Pls.' Opp'n at 40–41).  But the Court perceives that, despite the application of identical legal standards, there could be different relief—whether injunctive relief or money damages (*see* 5AC at 30–31, ¶¶ D, G, and H)—available for those who have been *prosecuted* for violating the alleged unconstitutional statutory provisions in contrast to those who have merely been *arrested* and detained, and any distinctions with respect to such relief might require the development of different facts related to the additional harms of prosecution and conviction.  *See Steinberg v. Gray*, 815 F. Supp. 2d 293, 299 (D.D.C. 2011) (declining to dismiss claims as duplicative where different relief was requested).  Therefore, the Court finds it premature to exercise its discretion to dismiss Claim 3 as duplicative at this time.

---

[8] Plaintiffs also seek to press these same two claims on behalf of two plaintiff classes:  one consisting of individuals who were arrested for engaging in panhandling and the other consisting of individuals who were prosecuted for that same infraction.  (*See id.* at ¶¶ 202–15.)

## IV. CONCLUSION

The District would have this Court decide *now*, at the motion-to-dismiss stage, whether or not Plaintiffs are correct that the challenged provisions of the D.C. Panhandling Control Act are content-based restrictions that are subject to strict scrutiny and cannot be sustained as narrowly tailored to further compelling government interests. For the reasons explained above, the District asks too much too early in the process of this litigation. Plaintiffs have plausibly *alleged* that the panhandling provisions at issue are content-based laws that restrict protected speech in public forums, and they maintain that the District had less restrictive, alternative means of achieving its stated objectives. This is enough to state a First Amendment claim for which various forms of relief could be granted.

Accordingly, as set forth in the March 29, 2019 Order (*see* ECF No. 69), Defendant's motion to dismiss is **DENIED**.


Date: June 11, 2019

*Ketanji Brown Jackson*

KETANJI BROWN JACKSON
United States District Judge